IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| **ALFRED LaNASA,** on behalf of himself individually and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**APPLE, INC.,**<br><br>Defendant. | § § § § § § § § § § § § § | Case No. 2:17-cv-17878<br><br>**CLASS ACTION COMPLAINT** |

## CLASS ACTION COMPLAINT

Plaintiff, individually and on behalf of the Classes defined below, files this Class Action Complaint against Apple, Inc. as follows:

### NATURE OF THE ACTION

1. Apple promised that its recent iOS 10 and iOS 11 software updates to the iPhone 6 and iPhone 7 models would improve those devices' performance and it strongly encouraged its customers to accept those updates. But Apple didn't tell its customers that it had intentionally designed those software updates to slow the devices' processing speed to correct a battery defect. Apple then happily took its customers' money when the customers, dissatisfied with their now-slower devices, purchased new and more expensive iPhones. Apple came clean only this month under public pressure, admitting its software updates were slowing processor speed. Now Plaintiff and Class Members must either purchase new phones for hundreds, if not thousands, of dollars or continue to struggle with their slowed devices.

2. Plaintiff asserts a class action on behalf of owners of the iPhone SE, iPhone 6, iPhone 6s, iPhone 6 Plus, iPhone 6s Plus (collectively, the "iPhone 6"), and the iPhone 7 and iPhone 7 Plus (collectively, the "iPhone 7") whose devices were harmed by Apple's updating of their devices'

software to iOS 10.2.1, 10.3, 10.3.1, 10.3.3 (the "iOS 10 Update") and to iOS 11.0.1, 11.02, 11.03, 11.1.1, 11.1.2, 11.2, and 11.2.1 (the "iOS 11 Update," and, collectively, the "iOS 10 and iOS 11 Updates"). Those updates were released between January 23, 2017 and December 13, 2017.

## THE PARTIES

3. Plaintiff Alfred LaNasa is a Louisiana citizen residing at 5523 Hawthorne Place, New Orleans, Orleans Parish, Louisiana 70124.

4. Plaintiff brings this action on his own behalf and on behalf of all others similarly situated, namely all other individuals who have purchased the iPhone SE, iPhone 6, or iPhone 7 and received the iOS 10 Update or iOS 11 Update.

5. Defendant Apple, Inc. is a corporation organized and existing under the laws of the State of California with its principal place of business at 1 Infinite Loop, Cupertino, California.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the state law claims asserted herein pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because some of the Class Members are citizens of states different from the Defendant's; upon the Complaint's filing, the putative class members reside in numerous states around the country; more than 100 putative class members exist; and the amount in controversy exceeds $5 million.

7. The Court also has personal jurisdiction over the Parties because Defendant conducts a major part of its national operations with regular and continuous business activity in Louisiana.

8. Venue is appropriate because, among other things: (a) Plaintiff is a resident and citizen of this District; (b) Defendant has directed its activities at residents in this District; and (c) the acts and omissions that gave rise to this Action took place, among others, in this judicial district.

9. Venue is also appropriate pursuant to 28 U.S.C. § 1391 because Defendant conducts a large amount of its business in this District and Defendant has substantial relationships in this

District. Venue is also appropriate in this Court because a substantial part of the events and omissions giving rise to the harm of the Class Members occurred in this District.

**SUBSTANTIVE ALLEGATIONS**

*The Core of Apple's Business: New Smartphone Sales*

10. Apple generates the majority of its sales from the iPhone. Sales from new iPhones alone accounted for 55 percent of total net sales during the third quarter of 2017, and 64 percent of total net sales for the first nine months of 2017.

11. Journalists have recognized the iPhone's importance to Apple's business, stating that Apple's "success is derived from selling brand-new high-end smartphones consistently month after month" and describing it as "the single most important product for the company."

*Apple's iPhone 6 was Plagued with Unexpected Shutdown Issues*

12. Despite the iPhone's importance, Apple has struggled with problems in its flagship product.

13. Over the past two years, Apple's iPhone 6 users have suffered from their devices shutting down unexpectedly, despite displaying sufficient battery levels. Admitted defects in the iPhone 6's and iPhone 6s' batteries caused those shutdown issues.

14. Consumers worldwide complained of the unexpected shutdown. In November 2016, a Chinese consumer association requested that Apple investigate "a considerable number" of reports by iPhone 6 and iPhone 6s users that the devices were shutting off despite displaying high battery levels and in room temperature environments.

15. Just a few weeks later, Apple acknowledged that "a very small number of iPhone 6s devices may unexpectedly shut down" due to battery issues. It admitted, on its Chinese-language website only, that this problem had been caused by "a battery component's" unduly long exposure to "controlled ambient air" during manufacture between September and October 2015.

16. Apple offered to replace batteries for a limited number of iPhone 6s manufactured between September and October 2015. To obtain those replacement batteries, Apple required its customers to back up their data, erase the "data and setting on their devices," bring their phones to instore locations, and pay to repair other unrelated damage to the phones. Apple did not extend its warranty for the repaired phones.

17. Despite Apple's claims that this battery defect affected only "a very small number" of devices, Apple employees reported to journalists that they were "seeing anywhere from 15 to 30 battery replacements every day" in late 2016—*Fortune* magazine described the iPhone 6 and iPhone 6s "battery issue" as "endemic."

18. Not surprisingly, Apple's limited battery replacement did not resolve the unexpected shutdown problem. iPhone 6 and iPhone 6s owners continued to suffer from unexpected shutdowns, including owners who purchased devices manufactured outside of September through October 2015.

19. On January 23, 2017, Apple released its iOS 10.2.1 software update for iPhone 5 and later generations.

20. Apple did not immediately disclose to consumers that it intended the iOS 10.2.1 update to fix the shutdown problem. It waited until February 2017 to disclose that the update had "made improvements to reduce occurrences of unexpected shutdowns."

21. But Apple concealed what exactly those "improvements" were.

### *Apple Admitted its iOS 10 and iOS 11 Updates Slowed the iPhone's Processing Speed*

22. iPhone owners with the iOS 10 and 11 Updates repeatedly complained that the devices were running more slowly after the updates.

23. Spurred by those complaints, in late December 2017, PrimateLabs, a company that creates software to measure computer processing speed, released the results of tests on the iPhone 6s and the iPhone 7. Those tests showed that the introduction of iOS 10.2.1 on the iPhone 6s and iOS

11.2.1 on the iPhone 7 caused those devices' processing speed to slow compared to earlier operating systems.

24.     Upon information and belief, the introduction of each iOS update after iOS 10.2.1 similarly caused the iPhone SE, iPhone 6, and iPhone 7 to operate more slowly.

25.     In response, Apple publicly admitted that the iOS10 and iOS11 Updates slowed down the iPhone 6 and iPhone 7, stating:

> Our goal is to deliver the best experience for customers, which includes overall performance and prolonging the life of their devices. Lithium-ion batteries become less capable of supplying peak current demands when in cold conditions, have a low battery charge or as they age over time, which can result in the device unexpectedly shutting down to protect its electronic components.
>
> Last year we released a feature for iPhone 6, iPhone 6s and iPhone SE to smooth out the instantaneous peaks only when needed to prevent the device from unexpectedly shutting down during these conditions. We've now extended that feature to iPhone 7 with iOS 11.2, and plan to add support for other products in the future.

26.     In short, Apple had "improved" its iPhone SE, iPhone 6 and iPhone 7 by slowing down their processing speeds to prevent unexpected shutdowns—shutdowns caused by problems in Apple's battery.

27.     Notably, Apple made this "improvement" to the iPhone 7 even though there had not been extensive complaints about unexpected shutdowns of the iPhone 7.

28.     Upon information and belief, replacing the battery in the iPhone SE, iPhone 6, and iPhone 7 prevents the processing speed from slowing because the iOS 10 and iOS 11 Updates only slow processing speed when battery condition decreases past a certain point.

29.     Apple has not disclosed that battery replacement will prevent slower processing speed.

30.     And, until its recent admission, Apple had never previously disclosed that the iOS 10 Updates and iOS 11 Updates would slow down its customers' iPhones. In fact, Apple had promised the opposite.

*Apple Promised its iOS 10 and iOS 11 Updates Would Improve the User's iPhone.*

31. A key component of the iPhone is its operating system, which Apple regularly updates.

32. Apple represents to its customers that those updates will benefit their iPhones.

33. Apples claims that its current iOS 11 operating system "makes iPhone better than before" and that with "iOS 11, iPhone and iPad are the most powerful, personal, and intelligent devices they've ever been."

34. Apple previously claimed that the iOS 10 operating system "make[s] everything you love about your iPhone and iPad even better."

35. Apple, incredibly, promised that "in iOS 10, accessing the information you need is *easier and quicker* than ever"—even though Apple admittedly designed iOS 10.2.1 to slow processing speeds.

36. Apple further touted the benefits of each iteration of those operating systems.

37. Specifically, Apple represented that:

   a. iOS 10.2.1 "includes bug fixes and improves the security of your iPhone . . ." and also "improves power management during peak workloads to avoid unexpected shutdowns on iPhones." Nowhere did Apple disclose that avoiding unexpected shutdowns required slower processors.

   b. iOS 10.3.1. offered "new features" and improvements to various applications.

   c. iOS 10.3.2 and 10.3.3 included "bug fixes" and improved "the security of your iPhone . . . ."

   d. iOS 11.0.1, iOS 11.0.2, and iOS 11.0.3 included "bug fixes" and "improvements" to various iPhone functions.

   e. iOS 11.1, iOS 11.1.1, iOS 11.1.2, iOS 11.2, and iOS 11.2.1 similarly include numerous "bug fixes" and improvements in iPhone functionality.

38. In addition to proclaiming the software updates' benefits, Apple also made it very difficult for its customers to avoid the iOS 10 Updates and iOS 11 Updates.

39. The iPhone SE, iPhone 6, and iPhone 7 devices repeatedly reminded Plaintiff and Class Members to update their software until the owner agreed to accept the updates.

40. Additionally, if Plaintiff and Class Members did not update, applications for their devices would ultimately become unusable.

### *Plaintiff Suffered Damages from the iOS 10 and iOS 11 Updates.*

41. Plaintiff and Class Members own or have previously owned iPhone SE, iPhone 6s, or iPhone 7s during the time Apple released the iOS 10 and iOS 11 Updates.

42. As a result of the iOS 10 and iOS 11 Updates, Plaintiff's iPhone operated more slowly and its functionality was materiality impaired. His iPhone suffered problems with applications freezing and delayed response time.

43. Plaintiff attempted to address those problems by purchasing new iPhones, at the cost of hundreds of dollars.

44. Plaintiff was unaware of the slowed processing speed caused by the iOS10 and iOS 11 Updates.

45. Had he been aware of the decreased processing speed caused by those updates, Plaintiff would have purchased different, non-Apple, phones, refused to accept the updates, or purchased new batteries to avoid the processing speed slowdown.

46. Defendant's wrongful actions directly and proximately caused the loss of value to Plaintiff's and Class Members' iPhones causing them to suffer, and continue to suffer, economic damages and other harm for which they are entitled to compensation, including:

    a. Replacement of old phone;

    b. Loss of use;

    c. Loss of value;

    d. Purchase of new batteries;

    e. Ascertainable losses in the form of deprivation of value of their iPhones; and

  f.  Overpayments to Defendant for iPhones in that a portion of the price paid for each such iPhone by Plaintiff and Class Members to Defendant was for Defendant to purposefully not interfere with the usage of their iPhones.

## CLASS ACTION ALLEGATIONS

47. Plaintiff brings this action on his own behalf and pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3), and (c)(4), Plaintiff seeks certification of a nationwide class and a Louisiana class (each a "Class" and, collectively, "the Classes").

48. The nationwide class is initially defined as follows:

> All persons residing in the United States who have owned the iPhone SE, iPhone 6, and iPhone 7 that received any of the iOS 10 or iOS 11 Updates.

49. The Louisiana class is initially defined as follows:

> All persons residing in Louisiana who have owned the iPhone SE, iPhone 6, or iPhone 7 that received any of the iOS10 or iOS 11 Updates.

50. Excluded from each of the above Classes are Defendant, including any entity in which Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by Defendant, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendant. Also excluded are the judges and court personnel in this case and any members of their immediate families. Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveal that the Classes should be expanded or otherwise modified.

51. ***Numerosity***. Fed. R. Civ. P. 23(a)(1). The members of the Classes (the "Class Members") are so numerous that the joinder of all members is impractical. While the exact number of Class Members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of Class Members, at least. Class Members are readily identifiable from information and records in Defendants' possession, custody or control.

52. ***Commonality.*** Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact

common to the Classes, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a.    Whether Defendant's failure to disclose the iOS 10 and iOS 11 Updates' decreases of iPhone processing speed while touting those Updates' benefits constitutes fraudulent omission;

    b.    Whether Defendant's failure to disclose the iOS 10 and iOS 11 Updates' decreases of iPhone processing speed while touting those Updates' benefits constitutes negligent omissions;

    c.    Whether Defendant intentionally and improperly used, altered, or destroyed Plaintiff's or Class Members' iPhone SE, iPhone 6, or iPhone 7 devices;

    d.    Whether Plaintiffs and the Classes are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

53.    ***Typicality.*** Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of those of other Class Members. Each Class Member suffered damages from the loss of use and value of the iPhone SE, iPhone 6, or iPhone 7 device because of the performance slowdowns. The injuries of the Plaintiff and Classes are identical and Plaintiff's claims for relief are based upon the same legal theories as the claims of other Class Members.

54.    ***Adequacy of Representation.*** Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained competent counsel experienced in litigation of class actions and complex civil litigation who will vigorously prosecute this litigation. Plaintiff's interests are not antagonistic or in conflict with the Class Members' interests.

55.    ***Superiority of Class Action.*** Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Classes is economically and procedurally impracticable. Additionally, resolving this controversy through a class action will avoid the possibility of inconsistent or conflicting adjudications of the asserted claims. Further, damages for any individual Class Member will be likely

insufficient to justify the cost of litigation so, without class treatment, Defendant's violations of law inflicting substantial aggregate damages would be un-remedied.

## CAUSES OF ACTION

### COUNT ONE
### Fraudulent Omission

56. Plaintiffs incorporate and reallege the substantive allegations contained in each and every paragraph of this Complaint.

57. Defendant failed to disclose facts within its knowledge to the Plaintiffs and Class Members, namely that the iOS 10 and iOS 11 Updates would cause the iPhone SE, iPhone 6, and iPhone 7 (the "Affected Phones") to run more slowly and that the decrease in processing speed could be avoided by the purchase of a new battery (the "Concealed Facts").

58. Defendant had a duty to disclose the Concealed Facts because they made Defendant's earlier representations misleading or untrue. Specifically, Defendant represented that iOS 10 operating system "make[s] everything you love about your iPhone and iPad even better," that and "in iOS 10, accessing the information you need is easier and quicker than ever before." Defendant's subsequent iOS 10.2.1 update, however, slowed the Affected Phones' processing speed, making "accessing the information you need" slower than before.

59. Additionally, Defendant represented that its iOS 11 operating system "makes iPhone better than before" and that with "iOS 11, iPhone and iPad are the most powerful, personal, and intelligent devices they've ever been." But Defendant's subsequent iOS 11.2 update weakened the Affected Phones' processing power.

60. Defendant had a duty to disclose the Concealed Facts because Defendant made a partial disclosure and conveyed a false impression, giving rise to the duty to speak. Specifically, Defendant represented that iOS 10.2.1 "improves power management during peak workloads to avoid

CLASS ACTION COMPLAINT                                                                                    Page 10
31086 v1

unexpected shutdowns on iPhones" but failed to disclose the "improvement" was to reduce the Affected Phones' processing speed.

61. The Concealed Facts were material because the decrease in processing speed significantly impacted the functionality of Plaintiff's and Class Members' iPhones.

62. Defendant was deliberately silent when it had a duty to speak and by failing to disclose the Concealed Facts, upon information and belief, intended to induce Plaintiffs and Class Members to purchase newer iPhone models, rather than simply purchase new batteries for their devices.

63. Plaintiffs and similarly situated Class Members relied on Defendants' non-disclosure of the Concealed Facts and were injured as a result of acting without that knowledge. Specifically, Plaintiffs and similarly situated Class Members unnecessarily purchased newer iPhone models, purchased other Apple accessories in an attempt to restore processing speed, or suffered unnecessarily prolonged loss of the use and function of their devices which could have been remedied by the purchase of a new battery.

## COUNT TWO
### Negligent Misrepresentation/Omission

64. Plaintiffs fully incorporate and reallege the substantive allegations contained in each and every paragraph of this Complaint.

65. Defendants made representations about the Affected Phones in the course of its business or in a transaction in which it had a pecuniary interest, namely in the sale of iPhones.

66. Defendants provided false information about the Affected Phones for the guidance of Plaintiffs and Class Members. Specifically, Defendant represented that iOS 10 operating system "make[s] everything you love about your iPhone and iPad even better," that and "in iOS 10, accessing the information you need is easier and quicker than ever before." Defendant's subsequent iOS 10.2.1 update, however, slowed the Affected Phones' processing speed, making "accessing the information you need" slower than before.

67. Additionally, Defendant represented that its iOS 11 operating system "makes iPhone better than before" and that with "iOS 11, iPhone and iPad are the most powerful, personal, and intelligent devices they've ever been." But Defendant's subsequent iOS 11.2 update weakened the Affected Phones' processing power.

68. Defendant represented that iOS 10.2.1 "improves power management during peak workloads to avoid unexpected shutdowns on iPhones" but, in fact, the update did not improve power management but reduced processing speed.

69. Defendant had a legal duty to supply correct information to Plaintiff, but did not exercise reasonable care or competence in obtaining or communicating the information because Defendant claimed that the iOS 10 and iOS 11 Updates would improve the Affected Phones while knowing those updates reduced the Affected Phones' processing speed.

70. Plaintiff and Class Members relied on Defendants' representations and were injured as a result of so relying. Specifically, Plaintiffs and similarly situated Class Members unnecessarily purchased newer iPhone models, purchased other Apple accessories in an attempt to restore processing speed, or suffered unnecessarily prolonged loss of their devices' loss of use and function which could have been remedied by the purchase of a new battery.

## COUNT THREE
## CONVERSION

71. Plaintiff incorporates and realleges the substantive allegations contained in each and every paragraph of this Complaint.

72. Plaintiff and Class Members own or have previously owned the Affected Phones during the time Apple released the iOS 10 and iOS 11 Updates.

73. The owned or previously-owned Affected Phones constituted Plaintiff's and Class Members' movable property.

74. Defendants intentionally and improperly used, altered or destroyed Plaintiff's and Class' Members' iPhones by reducing their processing speed.

75. Plaintiff and Class Members never authorized Defendant to use or otherwise interfere with their iPhones.

76. Defendant's tortious conduct resulted in the derogation of Plaintiff's possessory rights.

77. Defendant's acts caused Plaintiff and Class Members economic damages and other harm, including, but not limited to, loss of use and enjoyment of their iPhones, loss of value, and losses in the form of costs to upgrade or otherwise replace their iPhones.

### COUNT FOUR
### VIOLATION OF LOUISIANA CIVIL CODE ART. 2315

78. Plaintiff incorporates and realleges the substantive allegations contained in each and every paragraph of this Complaint.

79. Defendant's acts caused Plaintiff and Class Members economic damages and other harm, including, but not limited to, loss of use and enjoyment of their iPhones, loss of value, and losses in the form of costs to upgrade or otherwise replace their iPhones.

80. By reason of the foregoing, Plaintiff and Class Members are entitled to relief pursuant to La. Civ. Code Ann. art. 2315(a).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all Class Members proposed in this Complaint, respectfully requests that the Court enter judgment in his favor against Defendant as follows:

A. For an Order certifying the Nationwide Class and Louisiana Class as defined herein, and appointing Plaintiff and his counsel to represent the Nationwide Class and the Louisiana Class;

B. For an award of actual damages and compensatory damages, in an amount to be determined;

C.   For an award of costs of suit and attorneys' fees, as allowable by law; and

D.   Such other and further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Based on the foregoing, Plaintiff, of behalf of himself and all others similarly situated, hereby demands a jury trial for all claims so triable.

Dated: December 28, 2017.       Respectfully submitted,

**STECKLER GRESHAM COCHRAN PLLC**

*/s/ Bruce W. Steckler*
Bruce W. Steckler
Louisiana Bar No. 33657
Texas Bar No. 00785039
L. Kirstine Rogers (*Pro Hac Vice Forthcoming*)
Texas Bar No. 24033009
12720 Hillcrest Road – Suite 1045
Dallas, TX 75230
Telephone: 972-387-4040
Facsimile: 972-387-4041
bruce@stecklerlaw.com
krogers@stecklerlaw.com

**JOHNSTON PRATT PLLC**
Kenneth C. Johnston (*Pro Hac Vice Forthcoming*)
Texas Bar No. 00792608
Robert W. Gifford (*Pro Hac Vice Forthcoming*)
Texas Bar No. 24093543
1717 Main Street, Suite 3000
Dallas, Texas 75201
Telephone: (214) 974-8000
Facsimile: (972) 474-1750
kjohnston@johnstonpratt.com
rgifford@johnstonpratt.com

*Attorneys for Plaintiffs*